COUNTY OF MORTON, a Municipal Corporation, Respondent, v. HUGHES ELECTRIC COMPANY, a Corporation, Appellant.

(208 N. W. 108.)

**Highways — board of county commissioners have no power to grant right of way to public service corporation over highway within county.**

1. A board of county commissioners has no power to control or supervise, or to grant a right of way to a public service corporation over or upon, any "state highway" within the territorial limits of their county.

**Highways — state highway commission no power to grant right of way for electric power transmission line over state highway under its supervision.**

2. All "state highways" are under the general control and supervision of the

---

Note.—As to use of street by public service corporation within discretion of legislature, see annotation in 22 L.R.A.(N.S.) pp. 933, 937; 13 R. C. L. 171; 3 R. C. L. Supp. 23.

state highway commission; but such commission is not empowered to grant a right of way for the erection of an electric power transmission line over or upon any of the state highways under the control and supervision of such commission.

**Highways — board of county commissioners — no right to enjoin, in name of county, alleged improper use of state highway.**

3. A board of county commissioners has no right to maintain an action in the name of the county to enjoin an alleged improper use of a "state highway."

Opinion filed March 4, 1926.

Electricity, 20 C. J. § 25 p. 325 n. 86.  Highways, 29 C. J. § 298 p. 573 n. 38; § 382 p. 627 n. 74 New; § 409 p. 646 n. 46 New.

Appeal from the District Court of Morton County, *Berry*, J.
Defendant appeals from an order granting a temporary injunction.
Reversed.

. *Crum & Crum,* for appellant.
*C. F. Kelsch* and *Sullivan, Hanley & Sullivan,* for respondent.

CHRISTIANSON, Ch. J.  Morton county brought this action to enjoin the defendant from carrying its electric transmission line across the Missouri river, upon and over the Missouri river bridge, known as federal aid project No. 100.  The trial court granted a temporary injunction and the defendant has appealed.

The material facts are not in dispute.  The defendant is a public utility owning and operating an electric light and power plant in the city of Bismarck, and engaged in the business of generating, selling and distributing electric current from such plant.  It has under construction a transmission line to be utilized in transmitting power between the cities of Bismarck and Mandan.  It desires and intends to attach such transmission line to the Missouri river bridge known as federal aid project No. 100; and it intends to use the said bridge and approaches thereto on both sides of the river for the purpose of carrying such electric power line across the Missouri river.  The west half of the bridge lies within the boundaries of the plaintiff county.  On May 28th, 1924, the defendant presented to the state highway commission an application for permission to utilize the bridge and approaches thereto

for the purpose of carrying a transmission line across the Missouri river. And at that time the state highway commission duly adopted a resolution to the effect "that the Hughes Electric Company of Bismarck be permitted to carry its transmission line across the Missouri river attached to the Missouri river bridge, providing that such line is attached to the bridge by properly designed members and that such manner of construction be approved by the highway commission, and providing that the Hughes Electric Company shall furnish current free of charge for lighting the bridge structure." There is no contention, however, that the transmission line in question is being constructed for the purpose of lighting any part of the highway. The sole purpose thereof is to transmit electric current between the cities of Bismarck and Mandan.

Upon these facts we are confronted with two conflicting claims of power. The plaintiff contends that all highways in Morton county outside of the limits of incorporated cities, villages and townships are under the supervision and control of the board of county commissioners of that county; that the portion of the highway and bridge in controversy here is within the jurisdiction and supervision of the board of county commissioners of the plaintiff county, and that, consequently, the defendant has no right to place its transmission line in said highway at all or use the bridge or approach thereto within said county for the purpose of carrying such transmission line, unless and until a franchise has been granted to the defendant by the board of county commissioners of the plaintiff county authorizing the use of the highway for that purpose.

The defendant on the other hand contends that the bridge and highway in question are within the jurisdiction and under the control of the state highway commission and that it has absolute jurisdiction and control over such bridge and highway and full power to grant authority to the defendant to utilize the same for the purpose of carrying the transmission line.

Plaintiff's contentions rest upon § 1921, Comp. Laws 1913, and § 5441, Comp. Laws 1913, as amended by chapter 188, Laws 1925, which read as follows:

"In the opening, vacating or changing of a highway outside of the limits of incorporated cities, villages or towns, all proceedings relating

thereto to acquire right of way and to all other matters connected therewith shall be under the charge and in the name:

"1. Of the board of county commissioners, if the county is without a civil township organization, or if the road is in territory not organized into a civil township. . . .

"3. Of the board of county commissioners of each county in case the road is between or in two or more counties. . . ." Comp. Laws 1913, § 1921.

"The board of county commissioners of any county, board of supervisors of any township, board of aldermen of any incorporated city, or board of trustees of any town or village in this state, may, when deemed for the best interest of their respective municipal corporations, grant to any person, who is a resident of this state, or to any company or corporation duly licensed to do business within this state, the right of way for the erection of a telephone line or electric light system over or upon any public grounds, streets, alleys or highways under the care or supervision of such board granting such right of way. Such right of way shall be granted subject to such conditions, restrictions and regulations as may be prescribed by the board granting the same, as to what grounds, streets, alleys or highways said lines shall run upon, over or across, and as to the places where the poles to support the wires shall be located, and all grants of right of way for the construction of telephone lines or electric light systems heretofore made, in accordance herewith, by any board above mentioned, are hereby made valid." Comp. Laws 1913, § 5144, as amended by chap. 188, Laws 1925.

The defendant's contention rests upon § 2, chapter 141, Laws 1919, which reads as follows:

"The state highway commission shall meet at the capitol and other convenient places and at such times as it may deem essential to the carrying out of the provisions of this act. It shall determine the character and have general control and supervision of the construction, reconstruction, improvement, repair and maintenance of all state highways, hereinafter defined, including all bridges, culverts and other highway structures therein as are improved, constructed or reconstructed under the provisions of this act and shall direct and supervise the maintenance of the entire system of state highways. It shall determine the character and have general control and supervision of the

construction and reconstruction of all bridges, culverts and other highway structures and of all other improvements on the system of state highways. For the purposes of this act the necessary bridges and culverts on any such highway shall be considered a part of such highway, but contracts for bridges and culverts may be let separately. From and after the passage and approval of this act, no portion or portions of any state highway shall be vacated or changed except upon the approval and consent of the state highway commission.

"The terms 'state highway' and 'state highway system,' as the same are used in this Act, shall refer only to such highways as have been heretofore or shall hereafter have been designated, improved or constructed under the provisions of §§ 4 and 5 of chapter 131 of the Laws of North Dakota of 1917."

There is, in our opinion, no question but that the highway in controversy is a "state highway" within the meaning of that term as defined in chapter 141, Laws 1919. The bridge and the approaches thereto were, what is commonly denominated, a federal aid project, constructed under the direction and supervision of the state highway commission. Furthermore, the bridge was constructed under chapter 73, Laws 1919, which so far as material here reads thus:—

"That hereafter the state of North Dakota shall aid to the amount of one third of the cost of the construction of any bridge hereafter built across the state line upon interstate roads or highways or across navigable streams within the state of North Dakota, *on state highways or roads.*"

Subsequent legislative assemblies appropriated $300,000 "for the purpose of aiding in the construction of the substructure, superstructure and structural approaches of a bridge across the Missouri river from Burleigh county to Morton county, under the provisions of chapter 73, of the Laws of North Dakota for the year 1919." Laws, Special Session, 1919, chap. 4, Laws 1921, chap. 6.

We are entirely satisfied that the highway in controversy falls within the purview of § 2, chapter 141, Laws 1919, and is within the control and supervision of the state highway commission to the extent and for the purposes prescribed by that statute. It necessarily follows, therefore, that such highway is not one "under the care and supervision" of the board of county commissioners of Morton county; and that

that board has no power to grant a right of way for an electric power transmission line over or along said highway under § 5441, Comp. Laws 1913, as amended by chapter 188, Laws 1925. The state has control over its highways, and a county has no power to grant right of way privileges over or upon them to public service corporations, unless such power has been delegated to it by the legislature. 13 R. C. L. pp. 171, 172. And so far as we can ascertain the legislature has not delegated to the board of county commissioners the power to grant such right of way upon state highways. It does not follow, however, that the state highway commission has power to grant such right of way. The state highway commission is a governmental agency of the state, and possesses such powers and such powers only as are conferred upon it by law. And § 2, chapter 141, Laws 1919, does not purport to confer power upon the state highway commission to grant right of way to public service corporations. The power granted to the state highway commission is to "determine the character and have general control and supervision of the construction, reconstruction, improvement, repair and maintenance of all state highways . . . including all bridges, culverts and other highway structures therein. . . ."

The power granted relates to the construction and reconstruction of state highways and the maintenance, supervision and control thereof for highway purposes. The act does not purport to give the highway commission power to subject the highways under their supervision and control to other than highway use. And it would seem to follow, by necessary implication, from the rule announced in Cosgriff v. Tri-State Teleph. & Teleg. Co., 15 N. D. 210, 5 L.R.A.(N.S.) 1142, 107 N. W. 525, that the state highway commission is not empowered to grant a right of way to construct and operate a telephone, telegraph or electric power transmission line over or upon state highways. In other words, as we construe the statutes the legislature has not conferred power upon any board or governmental agency to grant a right of way for the construction of any telephone, telegraph or electric power transmission line upon state highways. Whether this was an oversight, or an intentional act, on the part of the legislature is not for us to determine. Our duty ceases when we have ascertained and declared the legislative will as expressed in the law.

In this case, therefore, we are confronted with a situation where a

county seeks to enjoin a public service corporation from constructing an electric power transmission line over a state highway within such county,—a highway over which the county authorities have no supervision or control, but which is under the control and supervision of the state highway commission. And the question is presented whether the county may maintain such action. After careful consideration we are constrained to answer the question in the negative. While there is ample authority to the effect that where a county is charged with the maintenance of, and empowered to supervise and control, highways within its borders, it may in a proper case invoke the aid of equity and enjoin the improper use of such highways, no authority has been cited and none has been found to the effect that a county may maintain such action as regards a highway over which it has no supervision or control. On the contrary the very cases which sustain the right to maintain such action on the part of a county as regards highways under its supervision and control, by implication deny such right in a case, like the one at bar, where the highway is under the supervision and control of some governmental body or agency other than the county. 1 Elliott, Roads & Streets, 3d ed. § 532; 1 High, Inj. 4th ed. § 816.

The legislature has clearly evidenced an intention that state highways shall be under the sole control and supervision of the state highway commission and that the several counties and townships through which such highways pass shall have no right of control over them. The legislature has indicated in the most unmistakable terms both the existence, and the limit, of the powers of local boards, such as boards of county commissioners and township supervisors, as regards highways under the care and supervision of such local boards; and it has also in equally plain terms indicated both the extent of, and the limits upon, the power of the state highway commission as regards state highways. The statutes clearly indicate that the legislature intended that so far as state highways are concerned there shall be no divided responsibility. It placed such highways under the sole control and supervision of the state highway commission. The highway in question is under such control and supervision and the plaintiff county has no more right to control the same than has any other county in the state. The legislature has conferred upon the state highway commission the power to control and supervise state highways and has imposed upon it the duty and

responsibility that arise from the power so conferred. What judicial relief, if any, is available, and who may properly invoke it, in case the state highway commission fails to perform this duty is not involved in this case and need not be determined; but we are wholly agreed that a board of county commissioners have no right to maintain an action in the name of the county to enjoin an alleged improper use of a "state highway,"—a highway which the legislature has placed under the control and supervision of the state highway commission.

The order appealed from must be reversed and the action dismissed. It is so ordered.

NUESSLE, BIRDZELL, BURKE, and JOHNSON, JJ., concur.